United States District Court
Southern District of Texas
**ENTERED**
March 03, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSHUA FLOWERS, (TDCJ #02460603) | § § § | |
| Plaintiff, | § § § | |
| vs. | § § | CIVIL ACTION NO. H-24-4375 |
| BRIAN COLLIER, *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joshua Flowers, (TDCJ #02460603), is incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ). Proceeding *pro se* and *in forma pauperis*, he filed a complaint under 42 U.S.C. § 1983, alleging claims against multiple TDCJ officials based on an assault against him by another inmate. (Dkt. 1). At the Court's request, Flowers filed a More Definite Statement of his claims. (Dkt. 10).

Because Flowers is a prisoner who seeks relief against the government, the Court is required by the Prison Litigation Reform Act (PLRA) to scrutinize his claims and dismiss the complaint, in whole or in part, if it determines that the action is (1) "frivolous or malicious," (2) "fails to state a claim on which relief may be granted," or (3) "seeks monetary relief against a defendant who is immune from such

1/18

relief." 28 U.S.C. § 1915A(a); *see also* 42 U.S.C. § 1997e(c) (requiring screening of all § 1983 actions filed by prisoners). After considering the pleadings and the law, the Court concludes that this case must be dismissed for the reasons explained below.

## I.   BACKGROUND

Flowers filed this civil rights complaint in November 2024, alleging claims against Brian Collier, the Executive Director of TDCJ; Bobby Lumpkin, the Director of TDCJ-CID[1]; Warden Puente of TDCJ's Connolly Unit; an unidentified Connolly Unit Classification Officer; and Eric Nichols, Chair of the Texas Board of Criminal Justice. (Dkt. 1). Flowers's claims arise from an incident that occurred in September 2024, when he suffered serious injuries in an attack by his cellmate.

Specifically, Flowers alleges that before being moved to the Connolly Unit, he was held at TDCJ's McConnell Unit. (Dkt. 10, p. 9). While at the McConnell Unit, Flowers told Warden Masters that he feared for his life because Officer Revas had put a "hit" on him after Flowers filed an Offender Protection Investigation (OPI) against Officer Revas for using excessive force. (*Id.* at 2). Flowers alleges that an inmate named Pedro was also implicated in that OPI. (*Id.*). Flowers asked

---

[1] In December 2024, Eric Guerrero succeeded Lumpkin as Director of the Texas Department of Criminal Justice–Correctional Institutions Division. However, because Flowers seeks relief against Lumpkin in his individual capacity, the Court retains Lumpkin as the defendant.

to be placed on safekeeping status, but Warden Masters denied that request. (*Id.* at 5). Instead, Warden Masters transferred Flowers from the McConnell Unit to the Connolly Unit. (*Id.* at 3-4).

About a week after Flowers arrived at the Connolly Unit, an inmate named Dany Cruz—who had been Pedro's cellmate at the McConnell Unit—was also transferred to the Connolly Unit, and he was initially housed in the cell next to Flowers. (*Id.* at 4). On September 6, 2024, Flowers submitted an I-60 Inmate Request Form to TDCJ Safe Prisons Sergeant Alfaro, stating that he did not believe he was safe being housed so close to Cruz because of the OPI he had previously filed against Cruz's former cellmate. (*Id.* at 2). Despite this I-60, Connolly officials moved Cruz into Flowers's cell in early September. (*Id.*).

About two weeks later, Flowers told Cruz that when he had been at the McConnell Unit, he had filed an OPI concerning several gangs. (*Id.* at 7). When Cruz realized that this OPI included his former cellmate Pedro, he punched Flowers, giving him a black eye. (*Id.* at 7). Captain Ogunrinola responded to that fight. (*Id.* at 6). Flowers told Captain Ogunrinola that he did not feel safe in his cell, and he asked to be moved to a different cell away from Cruz. (*Id.*). Captain Ogunrinola refused to move Flowers at that time. (*Id.*). Flowers alleges that after that fight, he submitted another I-60 to Sergeant Alfaro asking to be placed in safekeeping status. (*Id.* at 8). He did not receive a response.

Two days later on September 27, 2024, while Flowers was sleeping on the floor of the cell, Cruz attacked him with a hot pot. (Dkt. 1, p. 6; Dkt. 10, pp. 6-7). Flowers suffered serious injuries in the assault, including numerous lacerations, a broken nose, a broken finger, and broken ribs. (Dkt. 10, p. 8). After the attack, Flowers was taken the hospital and then transferred on the medical chain to the Memorial Unit. (*Id.* at 9). Later, he was transferred to the John Sealy Unit for surgery on his finger. (*Id.*).

After the assault, Warden Puente opened a life endangerment investigation to determine where Flowers should be placed. (*Id.* at 8). In December 2024, Flowers was transferred out of the Connolly Unit as a result of that investigation. (*Id.* at 8-9).

In his More Definite Statement, Flowers identifies Warden Masters of the McConnell Unit, Captain Ogunrinola of the Connolly Unit, and TDCJ Safe Prisons Sergeant Alfaro as the prison officials whom he told about his fear for his life before the September 27 assault. (*Id.* at 9-10). As the basis for his claims against the named defendants, Flowers alleges that Collier "allows non-aggravated inmates to be housed with aggravated inmates." (*Id.* at 10). He alleges that Lumpkin "does not enforce [the] safe prison policy on the Connolly Unit." (*Id.*). And he alleges that Warden Puente "refused me an OPI for three months after I was almost killed." (*Id.*). Flowers does not identify any specific actions taken by either Eric Nichols or

the Connolly Unit Classification Officer that violated Flowers's rights. (*Id.* at 10-11). He appears to sue each of the defendants in both their official and individual capacities.

As relief, Flowers seeks money damages, an injunction to ensure that the safe prisons protections are enforced, and an injunction to prevent non-aggravated and aggravated inmates from being housed together. (*Id.* at 11-12). He also asks the Court to relieve Warden Puente from duty. (*Id.* at 11).

## II.  LEGAL PRINCIPLES

### A.  Actions Under 42 U.S.C. § 1983

Flowers brings this action under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, the plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). The first element recognizes that "state tort claims are not actionable under federal law; a plaintiff under [§] 1983 must show deprivation of a federal right." *Nesmith v. Taylor*, 715

F.2d 194, 195 (5th Cir. 1983) (per curiam). The second element, which requires action "under color of state law," means that generally only *state* actors—not private parties—can be liable for violations of civil rights. *See Frazier v. Bd. of Tr. of Nw. Miss. Reg'l Med. Ctr.*, 765 F.2d 1278, 1283 (5th Cir. 1985).

### B. The Prison Litigation Reform Act

The PLRA, which governs Flowers's action, requires the Court to examine the legal and factual basis of a prisoner's complaint and dismiss the case if it determines that the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005) (per curiam) (citing *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997) (citing *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (cleaned up). A complaint fails to state a claim upon which relief can be granted if

6/ 18

it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In reviewing the complaint, the Court must construe all allegations "liberally in favor of the plaintiff," "take[] all facts pleaded in the complaint as true," and consider whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up). If it does not, the complaint must be dismissed, even before service on the defendants. *See In re Jacobs*, 213 F.3d 289, 290 (5th Cir. 2000) (per curiam); *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

### C. *Pro Se* Pleadings

Flowers is proceeding *pro se* in this action. Pleadings filed by *pro se* litigants are not held to the same stringent and rigorous standards as pleadings filed by lawyers and instead must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). But even under a liberal construction, *pro se* plaintiffs "must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.*, 767

F.3d 475, 484 (5th Cir. 2014) (footnotes omitted).

## III. DISCUSSION

### A. Official Capacity Claims

To the extent that Flowers sues the defendants in their official capacities, his claims are barred by sovereign immunity.

#### 1. Claims for Money Damages

Sovereign immunity bars actions against a state or state official for money damages unless Congress has abrogated such immunity or the state has specifically waived its immunity. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66 (1989). But Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Id.* And the State of Texas has not waived its sovereign immunity for purposes of § 1983 actions. *See NiGen Biotech, L.L.C. v. Paxton,* 804 F.3d 389, 393-94 (5th Cir. 2015) ("Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it. Texas has not consented by statute, and § 1983 does not abrogate state sovereign immunity.") (cleaned up).

The fact that Flowers has sued state employees, rather than the State of Texas itself, does not change this analysis. When a state employee is sued in his or her official capacity, the employing entity is the real party in interest for the suit. *See*

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity"). Flowers's claims for money damages against the defendants in their official capacities are construed as claims against the State of Texas and are barred by the doctrine of sovereign immunity. These claims are dismissed with prejudice under 28 U.S.C. § 1915A(b)(2).

### 2. Claims for Declaratory and Injunctive Relief

Sovereign immunity plays a lesser role in claims for declaratory and injunctive relief. But Flowers's claims for such relief against the defendants are barred by immunity in this case.

The Eleventh Amendment bars claims for declaratory or injunctive relief against a state or state actor when those claims concern a state official's past actions rather than an ongoing violation of federal law. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)). To determine whether the plaintiff's claims for declaratory or injunctive relief are barred by the Eleventh Amendment, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). If the plaintiff seeks only relief based on past actions, the

Eleventh Amendment bars the claim. *See Green*, 474 U.S. at 71.

Flowers's amended complaint does not seek declaratory relief relating to an ongoing violation of federal law; instead, he seeks a declaration that the defendants' past actions violated his constitutional rights and he seeks relief based on those past actions. Because this relief is not available against the defendants in their official capacities, Flowers's claims for injunctive relief against the defendants in their official capacities are barred by the Eleventh Amendment. These claims are dismissed with prejudice under § 1915A(b)(2).

### B. Individual Capacity Claims

Flowers's claims against the defendants in their individual capacities are not barred by sovereign or Eleventh Amendment immunity. Therefore, the Court considers his allegations against each of them to determine whether they are sufficient to state a claim for relief.

#### 1. Claims Against Eric Nichols and the Unit Classification Officer

Flowers sues Texas Board of Criminal Justice Chair Eric Nichols, alleging he is liable for a "lack of safety and security" and "corruption." Flowers also sues an unidentified Connolly Unit Classification Officer for "improper housing" and "lack of safety and security." But Flowers does not allege facts sufficient to state a claim for relief against either of these defendants.

As explained above, a complaint fails to state a claim upon which relief can be granted if it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Rogers*, 709 F.3d at 407 (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the plaintiff alleges facially sufficient facts, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (cleaned up). But if the complaint does not include "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 570.

Neither Flowers's complaint nor his More Definite Statement contain any facts alleging a claim for relief against either Nichols or the unidentified Classification Officer. Instead, Flowers makes only the conclusory and unsupported allegation that they denied him "safety." While the Court is mindful that prisons have an obligation to keep prisoners reasonably safe, prison officials are not required to guarantee that any prison will be free of potential assailants or rival gang members. *See Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001). A claim that alleges only that prison officials did not keep a prisoner safe from harm does not state a claim upon which relief can be granted.

In the absence of specific facts showing how Nichols or the unidentified Classification Officer violated Flowers's constitutional rights, he fails to state a claim upon which relief can be granted against either of them. His claims against Nichols and the Connolly Unit Classification Officer in their individual capacities are dismissed with prejudice under § 1915A(b)(2).

### 2. Claims Against Brian Collier and Bobby Lumpkin

Flowers alleges in both his complaint and More Definite Statement that Brian Collier allows prisoners serving sentences for "non-aggravated offenses" to be housed with prisoners serving sentences for "aggravated offenses." Flowers alleges that Bobby Lumpkin does not enforce the safe prisons policy at the Connolly Unit.

To the extent that Flowers's allegations could be construed as seeking to hold Collier and Lumpkin responsible for the actions of their subordinates, he fails to state a claim. Under § 1983, supervisory officials are not responsible for the actions of their subordinates on a theory of either vicarious liability or *respondeat superior*. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Instead, only the direct actions or omissions of government officials will give rise to individual liability under § 1983. *See Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Flowers may not hold Collier or Lumpkin liable based on actions taken or not taken by prison officials at the Connolly Unit.

However, while supervisors may not be liable under § 1983 for the actions of

their subordinates, they may be held liable for their own actions. To state a claim against a supervisory official under § 1983, the plaintiff must allege facts showing either (1) the supervisor's personal involvement in a constitutional deprivation, (2) a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or (3) the supervisor's decision to implement an unconstitutional policy that resulted in a violation of the plaintiff's constitutional rights. *See Thompkins*, 828 F.2d at 303-04; *see also Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

Flowers does not allege a claim under any of these standards. First, he alleges no facts showing that either Collier or Lumpkin were personally involved with any of the allegedly wrongful acts at the Connolly Unit. He does not contend that either of them affirmatively participated in any of the decisions concerning where he would be housed, who his cellmate would be, or whether he should be placed in safekeeping status. Second, he does not allege facts showing that either Collier or Lumpkin knew of any alleged violations of the safe prisons policy at the Connolly Unit of that they failed to take any affirmative steps to address them. In the absence of such allegations, Flowers does not state a claim against either Collier or Lumpkin based on personal involvement.

Second, Flowers does not identify a policy implemented by either Collier or Lumpkin that is so deficient as to be unconstitutional. Instead, he seems to base his

claim on their failure to adopt a policy that would house inmates with "aggravated" sentences separately from those with "non-aggravated" sentences. The failure to adopt a policy or practice may be the basis for supervisory liability "when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992)). Liability for failing to adopt a policy exists only if the defendant acted with deliberate indifference in failing to adopt the policy. *Id.* To show deliberate indifference, the plaintiff must allege facts showing that official "disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Flowers alleges that Collier and Lumpkin failed to adopt a policy that would house inmates based on the length of their sentences. But publicly available records show that TDCJ's classification plan for inmates considers several factors, including sentence length, institutional adjustment factors, prior criminal record, and the current offense of record. *See* TDCJ Unit Classification Plan, available at https://www.aclu.org/sites/default/files/pdfs/capital/tdcj_unit_classification.pdf (visited Feb. 27, 2025). The plan also considers the inmate's disciplinary history and their history of violence. *Id.* Further, a related placement plan considers an inmate's mental and physical health needs in determining which Unit and what housing status to apply to a particular inmate. *See* Inmate Medical and Mental

Health Classification Policy A-08.4, available at tdcj.texas.gov (visited Feb. 27, 2025). These policies affirmatively show that Collier and Lumpkin have neither adopted an unconstitutional policy nor failed to adopt a policy in deliberate indifference to inmate safety. Instead, these policies reflect the position that inmates should be housed based on their entire record, not just the length of their sentences. Flowers has not alleged facts showing that these policies, which consider all of the inmate's characteristics and needs, are so deficient as to result in a violation of constitutional rights.[2] Nor do these policies reflect a deliberate indifference for inmate safety or that a policy of housing inmates based solely on the length of their sentences would be sufficient to prevent assaults, such as the one he suffered.

In the absence of such allegations, Flowers has failed to allege facts sufficient to show a plausible claim for supervisory liability against Collier and Lumpkin. His claims against Collier and Lumpkin are dismissed with prejudice under § 1915A(b)(1) for failing to state a claim upon which relief can be granted.

---

[2] The Court notes that Flowers was classified as a G5 inmate at the time of the assault. (Dkt. 10, p. 1). Inmates classified as G5 have one or more disciplinary convictions for assault with a weapon, two or more disciplinary convictions for assault without a weapon, one or more convictions for extortion or sexual abuse, or have escaped or attempted escape. *See* TDCJ Unit Classification Procedure 2.00, p. 7, available at www.aclu.org (visited Feb. 27, 2025). Flowers does not allege facts showing that he was misclassified, and TDCJ officials' decision to house him with other G5 inmates does not violate TDCJ policy.

### 3. Claim Against Warden Puente

Flower's only allegation against Warden Puente is that he violated Flowers's rights by failing to act on an OPI report for three months after the incident occurred. Construed liberally, this claim seems to be one for failure to protect.

Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). But as Justice Thomas as observed, "[p]risons are necessarily dangerous places." *Farmer*, 511 U.S. at 858 (Thomas, J., concurring in the judgment). Therefore, prison officials are not expected to prevent all inmate-on-inmate violence. *See Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). Instead, a plaintiff seeking to state a claim for a failure to protect must allege facts showing (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison official acted with "deliberate indifference to inmate health and safety." *Id.* (quoting *Farmer*, 511 U.S. at 834). To establish deliberate indifference, the plaintiff must allege facts showing that the prison official was aware that the plaintiff faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (quoting *Farmer*, 511 U.S. at 847).

Flowers's allegations to not meet this standard. Flowers does not allege facts

showing that Warden Puente was ever made aware of the initial altercation between Flowers and Cruz that occurred on September 25, 2024. While Flowers alleges that he submitted an I-60 to Sergeant Alfaro requesting that he be placed in safekeeping status after that fight, he does not allege any facts showing that Warden Puente was aware of that request. Warden Puente cannot be said to be deliberately indifferent in failing to protect Flowers against a potential harm of which he was completely unaware. *See Farmer*, 511 U.S. at 844.

After the September 27 assault that resulted in the serious injuries to Flowers, he was no longer housed with Cruz. And although Flowers alleges that Warden Puente failed to act on his OPI between September 27 and December 10, 2024, Flowers does not allege that he suffered any harm during that time. To the extent that Flowers was afraid of being assaulted again, such fear is insufficient to state a claim for relief under § 1983. *See, e.g., Hamby v. Warden, Estelle Unit*, Civil No. 20-3428, 2020 WL 7081606, at *2 (S.D. Tex. Dec. 3, 2020) (an inmate's generalized fear of harm is not sufficient to support a § 1983 claim); *see also Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir. 1980) (a plaintiff suing for the violation of a constitutional right under § 1983 is entitled to compensatory damages only if he can prove that he suffered an actual injury caused by the violation). Warden Puente is not liable for damages to compensate Flowers for his fear when Flowers suffered no injury because of a delay in reassigning him after the September 27 assault.

Flowers's allegations do not show that Warden Puente knew of a substantial risk to Flowers's safety before the September 27 assault, and any delays in permanently reassigning Flowers after the assault did not result in any injury. Accordingly, Flowers's claim against Warden Puente is dismissed with prejudice under § 1915A(b)(1) for failing to state a claim upon which relief may be granted.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. Flowers's Complaint for Violation of Civil Rights (Dkt. 1) is **DISMISSED** with prejudice.
2. The dismissal will count as a "strike" for purposes of 28 U.S.C. § 1915(g).
3. Any pending motions are **DENIED** as moot.
4. Final judgment will be separately entered.

The Clerk shall send a copy of this Memorandum Opinion and Order to the plaintiff. The Clerk shall also send a copy of this dismissal to the Three-Strikes List Manager at the following email: **Three_Strikes@txs.uscourts.gov**.

SIGNED at Houston, Texas, on ____Feb 28____, 2025.

_____
DAVID HITTNER
UNITED STATES DISTRICT JUDGE